Plaintiff Leanna Smith v. State of Arizona I appeal from a ruling from the District Court dismissing my client's case on reis judicata arguing that there were two preceding cases which were adjudicated where the facts were similar barring us from going forward. Our position is simple. The case that we have before you in this case has never been adjudicated in any court. Its facts are not related sufficiently to the other two cases such that you can find reis judicata. They are not the same set of similar damage issues like custody, but they're completely separate. I'm going to get into that in just a second. Well, let's hurry through some of this so we can get to what I think are the bigger issues. Smith too, as I understand it, Smith had her complaint dismissed without prejudice just prior to the defendant's filing of the answer or the motion for summary judgment. Is that correct? It wasn't a motion for summary judgment. That's correct. The court dismissed it without prejudice on Rule 41. That particular case, we had amended taking out this case and put it in state court. There was a particular part of that case we call the Aaron to Shun allegations that had statute of limitation problems. It's in my complaint. And so we knew that was there. The court found that those claims from December to, I mean January, I mean November to December of 09 were outside the statute of limitations. Well, but as I understood it, they dismissed the complaint without prejudice. Under Rule 41A1, your Honor, and it's never been dismissed before. So argument is simply that Case 1 cannot, I mean Case 2 cannot have res judicata implications. I understand your argument. Now Case 1. So who moved to Smith 1? Smith 1 is simply the original complaint that brought my client into the juvenile court system. There's no doubt that all this has involved actions that took place in the juvenile court system. So Case 1 is the initial report. That's the next appeal. It is the subsequent recommendation by the same doctors who made the initial report. It's the improper investigation. That was a Munchausen syndrome by proxy allegation. It wasn't that the doctor saying she had it saying that they were concerned she might have it. That was investigated by law enforcement. Law enforcement completed their investigation in January of 2009. My client moved to reunification. The reunification order was signed. So our argument is simply this. That case was filed on March 22nd, 2010. The key salient facts, which are this case, the manipulation of the child, the changing in therapy, the use of that therapy to drive a wedge between the mother and daughter, to damage the very relationship between a mother and daughter. That was their plan. They litigated issues in this child's mind to make her think her mother drugged her when she was younger. Those are the issues in this case. When you open that box and you look at what they did, it's disturbing. So would you agree then that anything prior to the filing of the state court complaint in the Smith one would have res judicata effect here? Your Honor, as I understand the law, and I know you understand it better than I do, but as I understand it, as of March 22nd when we filed the complaint, anything that's related should have been brought because it wasn't brought. So anything that is sufficiently related should have been brought. Or anything that is actually litigated, either because we put it in the pleadings and the court considers it or the court amends. If you'll recall in this case, I sought to amend and the court denied it. Well that was the third amended, as I understand it. What about there was a second amended complaint in December 2010. Should that be the cutoff date? Oh yeah, absolutely. But not for, not for any claims when subsequent claims occurred, it would go back to the original complaint. Any amended complaint would just bring in new causes of action. So if it was related to maybe some of the new causes of action, but they weren't. None of that. When we did that amended complaint, we still had not learned of our claims involving CPS and the therapy. We didn't learn about that until August of 2011. So when we're doing our amendments in case one, including our, it wasn't until we did our proposed third amended complaint that we knew the facts. And I had gone to the judge and said, you know, once I learn all the facts, we're actually still doing the juvenile court trial. So once we learned all the facts, then I wanted to amend, bring them all together into one lawsuit. I'm, I'm learning now that that probably wasn't a smart decision, but I thought it was at the time. But, but in this case it has no other relevance other than the judge in Smith one, Judge Martone, the issue was brought to bring Smith two into Smith one. And he found specifically they're not related. They're separate cases. They're not factually the same. So our argument is that when you look at the facts of the case from February of 2010, when Dr. Bursch was brought in, when Dr. Bush then goes to Greco, Marina Greco, the therapist, and says to her, let's start using these medical records, my report in therapy to change this girl's mind about her mother. Um, those are the dates you have the April emails. That's clearly outside of anything in case one. You have the April emails. Well, should we stop? Yes, Your Honor. All of these cases arise out of, are all related to dealing with the child. Is that right? Your Honor, they're not. Case one is dealing with what put you into dependency, pre-dependency findings. So that's case one, whether we should have gotten into it. That's this factual scenario. Case two is the error in the shine. It's a second report, separate and distinct from the first report. Different factual issues. The similarity is an assault and battery claim. This is a different assault. That's a different assault. It may be the same two people. It may be the same parties, but it doesn't make the claims identical, such that the only reason the error in the shine action had to be brought in case one is because when we filed the motion, the proposed Third Amendment complaint, it was within the statute of limitations. So if the court had granted the proposed Third Amendment complaint, at least the error in the shine allegations, which occurred in November to the latest would be January of 2010, when the police department closed that case and said there's no evidence. So that had to have been, when the court denied the proposed Amendment complaint, we were outside our statute of limitations. So we filed it, making as good an argument as we could, with Judge Silver, and she found our argument was unique, but she ruled against us. So now I'm in a situation where we've taken the therapy, the civil conspiracy, into this new cause of action, and so we move to dismiss, so that we can go forward with this case. Let me just make sure that I understand what's going on here. Is it, if you file case number one against defendant, I'll ask you some hypotheticals, I don't know if you'd like them, but you file case number one against defendants, doctors A, B, and C in the hospital, who are dealing with a child. And that is dismissed. And then you file a case against D, E, and F, who are nurses, in the hospital, who are dealing with the child at the same time. Can you do that? No. And the reason, they're related. They should have been brought in the first case. Okay. Now, let me just add one more. Now, if you file against all of the people, and it's dismissed, and then you file another claim saying, okay, that claim only went up to a certain period of time, now I'm going to file again, and it's going to be the next six months. Can you do that? Same conduct, but the same people, but different type of conduct, but different time period. And, and, and, Your Honor, I think we've answered that. It's that contemporaneous argument. If the facts are not contemporaneous. So you think you can do that? Yes. If the facts are not contemporaneous with the first case. So you've got events taking place outside. The first case is already going, and now you've got new events. They may be coming out of this, you know, like in this case, out of the juvenile court, people working with the juvenile court. In our particular case, Your Honor, using that scenario, the only people who had any ongoing involvement would be the case workers. That would be Bonnie Brown and McAlpine. Greco did therapy during, up to that point of, of the Ernest Shunt, but her therapy was directed by Dr. Pyburn, who was doing reunification, and they moved to reunification. Her bad acts don't start until February of 2010, when she meets with Bursch and gets this new therapy directions, and then begins implementing that new therapy. That has nothing to do with the, the first two cases. No, there's no factual relationship between them that we would have to have brought those in case one or case two. And your, your case, the case that you rely on that, that is closest to that? Your Honor, I don't have that one, but it's in my brief. It's, I don't, here, I can find that for you real quickly, Your Honor. Okay, that's all right. But no, it's, it's the cases that I cited in my brief that talk about it being contemporaneous. I mean, we spend a lot of time in our brief on that particular issue. My, my worry is that most of the events in the third action occurred before, before you were required, or before you filed your second amended complaint. True, we did know about them before. Why weren't you required to bring those claims in the first action? Your Honor, we attempted to bring those claims at the time the first complaint was filed in the first action, the second amendment complaint was filed in the first. We didn't even know about those cause of actions. It was prior to the trial in the juvenile court. So once we discovered the existence of these claims, we then sought to amend in case one. We were rejected. We were rejected, denied. In fact, I was sanctioned for having done so. So now I can't bring it in case one, so we had to file it. We filed it in case two. Maybe it was a poor tactical decision on my part to pull it out, but the decision was we didn't want to have these civil conspiracy, these claims for what these guys have done, tied into what could be problematic claims on the earnest shunt with that report to CPS. We didn't want those tied up with that. We knew that that was an issue we could lose on. Now that may have been a poor tactical situation, but that was resolved by the rule 41 dismissal, which resolved if we made a mistake in bringing it into, into that case, that 41 dismissal totally resolved that. Well, I'm dealing with identity of claims, and so therefore I wanted you to be able to respond to that. Thank you. Let me just your and it's your position that that none of the folks who were involved in this in the second suit were in privity to folks in the first. The state defense, you know, there's so many defense, the state defendants, clearly Bonnie Brown and McAlpine are in the first case. The, the, the factual basis for their liability there is separate from their liability in the second case. In the second case, it was Bonnie Brown and, and McAlpine who came and said that the mother must have been the one who put Aaron to shunt. That's a different factual liability. In this case, it was Bonnie Brown and McAlpine who made the decision to let a therapist read the book sickened with this young lady, which impacted her view of her mother to believe her mother had drugged her when she was younger. Those are completely separate facts, not related to each other. So are they in privity here? No, for those people. So if you went forward on Smith three, you would not be. Is it fair to say you would not be seeking to present any evidence predating March 2010 and it would all be post March 2010 when the, when Smith one was filed? The earliest date we have any evidence is January of 2010 when Dr. Buwalda was brought into the case and she starts therapy. This is now we're starting to move towards severance. We don't know it, but they've made up their mind and she directs my daughter, can't discuss religion with her daughter, can't have other family members at visitation. In our minds, that's the beginning of trying to destroy the relationship between the mother and her daughter. So that starts in January would be relevant to your Smith three case. Yes, but anything dealing with the air in the shunt at up to nine or January, we're outside the statute of limitations by ruling a Joe Silver. Thank you, Your Honor. Thank you. Good morning. May it please the Court. I'm Robin Burgess. I apologize. I have a pretty bad cold. From our perspective, there are, there are two key cases that really seem to cover the issues for us. To begin with, the issue here for us is that by the time plaintiff got to Smith three, plaintiff had plenty of prior opportunity to bring all of those claims in a timely manner in front of the very first judge or even the second judge. She made the effort to do so, but she just failed in how she approached it. So in the first case, by the time she first filed the complaint in March of 2010, she had all the facts she needed to file a lawsuit against anyone she felt was involved with any problem that she saw in the removal of her child and how they were handling the investigation, the treatment of that child. She was well aware, and you can tell from all of the pleadings that you probably have seen, and we're looking at in here eight or nine different versions of complaints, in every single one, there are facts pled over and over and over again relating to events in 2008, 2009, and early 2010, in addition to subsequent allegations relating to acts that took place later. But every single solitary  2010, the plaintiff was well aware of what the issues were, the fact that her daughter was being treated in a way that she was uncomfortable with. In 2008, the daughter sent an email that was cited in many of these complaints to the brother and the mother at home, saying that they're saying, my mother caused these problems, she caused my comas. The complaints also state that early on, there was an allegation the mother had Munchausen's by proxy, again, trying to poison the child allegedly. The worry that I have, I guess, is that I'm trying to find whether these would be, if you will, an identity of claims. Okay, and I'd be happy to focus on that. And I look at Smith 1. Smith 1 seems to cover events leading to the doctor's report, the CR's removal of the parental custody, and generally covering facts from 2006 to 2009. Then when I look at Smith 3, it seems like it's different. It seems like the facts there cover November 24th, 2009, and I'm putting that specifically because I took it right out of the complaint, through June 28th of 2010. They seem to cover the air shunt, the breakdown of the parent-child relationship, and they go for it, they make their claims. How is it that I can suggest that these are not completely independent? Well, I think that the relevant law is dispositive here, in that regardless of whether she raised the facts or raised the claims... Well, the relevant law is, I've got to find an identity of the claims. Correct, I think that... Well, I think the issue relating to the identity of claims is whether she could have brought the other claims in those earlier cases. And I think that the Tahoe Sierra case and the Mopoyo case both really address that very, very clearly. In fact, the Mopoyo case is almost identical to our case. It's a situation where some gentleman brought discrimination, race discrimination claims after they lost their jobs, and they claimed that they were racially discriminated against, racial epithets, things like that, at work. Then after the case had been percolating for quite a long time, a year or more, they moved to amend, to add additional claims under FEMLA and Fair Labor Standards Act that related to different facts, not the racial epithets, but other things. And the Court in that case denied the amendment. They then filed a separate second lawsuit, and that was barred by res judicata. And this Court determined in that case that if you have already attempted in an earlier case to add new theories of liability and new facts stemming, though, from the same general series of transactions — and in our case, our general series of transactions is the removal of that child and how CPS handled that entire situation. And the Court in Mopoyo determined that because the subsequent claims had already been denied by the first judge because they were untimely, res judicata barred that second lawsuit. That's what's happening here. In this case — You heard Counselor's answer to my question before. I said, okay, why weren't you required to bring the claims, the claims of the first action, the third action and the first action, and you heard his response. No weight to that response? I just feel that the problem with his response is that it misses the point. And what the point is, in 2010, when they were filing that first case, they were well aware of the facts supporting any particular claim that they could bring relating to any of the aspects of this removal and the way the child was being treated. The mother was complaining about how this child was being treated the entire time. They had an obligation to raise all applicable and relevant claims, no matter what you call them, whether you call it racketeering or civil conspiracy or intentional infliction, whatever the claim is, regardless of the label. The damage that she's claiming occurred early on. It may have been a continuing situation, and that's that point of it being a series of events or a series of transactions that are all related. And in the Tahoe Sierra case, that makes it very, very clear. In that case, there was a situation that occurred in 1987, and 12 years later, there was a complaint that action taken pursuant to this plan that had been in place deprived these homeowners of certain rights. And the Court said all that does is sort of emphasize additional damages. It doesn't change the fact that the original determination is where the damage causing began. The district court applied a rising out of the same transactional nucleus of facts, and said that because something happens later doesn't mean that it isn't arising out of the same transactional nucleus. Do you agree with that's what she did? Do you agree with that? Yes. I think that Judge Bolton got it right in terms of determining that what really happened here was the child was removed by CPS, an investigation ensued, and a lot of consultants were brought in to assist in that process. That entire series of events is one general act. And the fact that it is alleged that something happens, something different happened after the allegations in the first complaint that have been dismissed is not enough to prevent that race judicata. No, it's not. In fact, I think the Mapoyo case makes that very, very clear, as does the Sierra Tahoe case. But the example that you gave earlier about the hospitalization and whether you can sue the doctors and then separately sue the nurses when the doctors are dismissed, and I agree the answer to that is, of course, no. I think that plaintiff's theory here would be, though, that if you're hospitalized for three weeks and you bring a lawsuit about something that happened the first week and that's dismissed, you can now bring a separate lawsuit about something that happened in the second week. And, oh, that got dismissed. Now I'm going to claim something happened on the third week, and that gets dismissed. But it's one series of events. It's one hospitalization. There may be multiple acts of care that are involved. There may be multiple acts that are objectionable that are involved. But the entire gestalt of what happened has to be addressed all at one time. And in this case, they could and should have brought all of these claims in their initial complaint. They tried to bring it. That was denied. They tried to do it again in the first suit, dismissed it for whatever reason. They were offered the opportunity to amend in the second case, chose not to do so. But I think Mopoyo says you can't file that third suit. So, would your answer change if the judge in the first suit said, boy, I looked at this new claim you want to add to this case, and this really seems to be a different set of facts. I think you need to go and do a separate case. Well, in this case, what the judge said was that, he said two different things. One Judge Martone? Yes. Or Judge Campbell? We're talking about Campbell. Whoever it was that ruled on the third amended complaint. Right. And as I understand it, he gave it quite a bit of thought and said, boy, we've been going at this case for a while. I really think you shouldn't be bringing it in here. Maybe a separate case. Well, I think there's a differentiation. What he said, if you read his decision very, very closely, is that a lot of the claims that are trying to be brought in the third amended complaint should have been brought against the same people earlier. But the claims relating to the second child, J.S., that's a separate set of claims. And they were trying to also, in that third amended complaint, bring a claim by the father of J.S., who hadn't been a part of the original lawsuit, either. So what Judge Campbell was essentially saying is, all the claims relating to C.R. needed to have been brought in the first case. You didn't do it. Any other claims that you want to bring relating to J.S. and the father, Daryl Smith, that can be a separate lawsuit. That was new information, completely unrelated to what was already in front of this Court. But the issues relating to C.R., the investigation relating to C.R., the removal of C.R., the treatment of C.R., that was already in play for quite some time, and I think that's why the judge differentiated between the two. Let me go to the privity question. This Court made a finding about privity, and I'm having a tough time figuring out how all of these parties have privity when many of them were not involved in the first action, and they're distinctly different entities. Well, to begin with, privity tends, in the law, to really only apply against the party or to the party who is trying to say, I don't want Res Judicata to apply to me. They have to have been in privity. Here, the person who does not want Res Judicata to apply is the plaintiff. She was in every case. She had ample opportunity to raise every one of her claims. I don't really see how privity really relates here in this case, because she is the only plaintiff in every single one of these cases. But if we want to look at how the defendants may be in privity with one another, the allegations in the complaint itself, in the Smith III, are that every single one of the individual named defendants, the family, the foster parents, the caseworkers, every one of the consultants, Dr. Kaufman, Dr. Vivalda, Marina Greco, Dr. Bursch, every single one of them was acting, according to the plaintiff, at the request of the State, on behalf of the State, as part of the State's investigation. So throughout this litigation, to the extent that any allegations have been raised relating to the appropriateness of the acts taken by or on behalf of the State, every one of those people was in privity with the State. Every one of those people was acting as part of the State's investigation, and their acts are the acts, essentially, of the State, at least according to their complaint. And so even though they may not have been named individually in each and every one of the various complaints, the general acts that are being complained of throughout the litigation, the investigation, the treatment, et cetera, these people are all involved with that on behalf of the State, and they have been named throughout in multiple complaints. So they're not, in this case, Your Honor, claiming that they are not in privity with the State. In fact, I believe that in the briefing, it's pretty clear that taking the position that we were adequately represented throughout the case. Any other questions? No, thank you. Thank you very much. Thank you. I'll give you 30 seconds. Your Honor, I wanted to answer your question. The cases that we're relying on are MGA Entertainment and the Consultants case. For those, when you're dealing with this transactional, nucleus effect, you deal with the, if you have new conduct subsequent to the last date in the prior adjudication, it's a new case. It doesn't have to be brought into it. The loss of Joseph Campbell was devastating to me. I wish we hadn't filed that motion and kept him in the case, clearly. But his ruling is clear. The error in the shunt should have been brought in the first case. The issue regarding R.S. and the other father, we couldn't go forward with that at the time of the court's ruling. We lost that one in the juvenile court. We couldn't go forward with it, but things were happening at the same time. We were forced to amend a complaint before the juvenile court had ruled, but we had the facts and we attempted to do so. I don't think you can say that this case had to be brought in that one. Thank you, Your Honor. Thank you. Case 1415390 and 1415473 is submitted.
judges: Gleason, Schroeder, Smith